THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT J. JAKUPCAK, JR., Defendant-Appellant.

Third District   No. 3—93—0700

Opinion filed October 2, 1995.

Frank W. Ralph, of State Appellate Defender's Office, of Ottawa, for appellant.

Joseph Navarro, State's Attorney, of Ottawa (John X. Breslin, William L. Browers, and Martin P. Moltz, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Robert Jakupcak, Jr., appeals his conviction for reckless homicide. (720 ILCS 5/9—3 (West 1992).) Defendant contends that: (1) the trial court erred in denying his motion to strike the opinion of the State's expert concerning the speed of defendant's car; (2) the State failed to prove him guilty beyond a reasonable doubt of the offense of reckless homicide; (3) he was denied a fair trial because the family and friends of the deceased conspired throughout the trial to bring to the jurors' attention highly prejudicial and inadmissible materials, including posters suggesting that defendant or someone connected with him had vandalized the deceased's grave; and (4) the trial judge applied the wrong standard in considering his motion for a new trial. We reverse and remand for a new trial.

The charge of reckless homicide against the defendant arose out of the alleged unlawful killing of Angel Pence, whose death was caused by injuries received when the defendant's vehicle collided with her vehicle. The accident occurred at about 8:30 p.m. on May 30, 1992, in front of the Dairy Queen located on Route 23 in Streator, Illinois. Route 23 is a four-lane road with two lanes going north and two lanes going south. The posted speed limit on Route 23 is 40 miles per hour. There are a number of businesses in the area of the Dairy Queen.

The defendant's girlfriend, Roseanne Kohrt, testified that at about 8:30 p.m. on May 30, 1992, she was with the defendant in his car, a 1974 Chevrolet Monte Carlo. Defendant was driving north on Route 23 in Streator. At the time, Kohrt and the defendant had no destination in mind. Kohrt testified that the defendant drove past the Dairy Queen on Route 23. The defendant then proceeded to the intersection of Route 23 and Oakley Avenue. Defendant and Kohrt decided to go to Ottawa. The defendant needed to turn his car around to get gas, so he turned left on Oakley, heading west, and turned his car around in the parking lot of the Food Expo grocery store and headed back towards the intersection of Oakley Avenue and Route 23.

Kohrt testified that the defendant stopped at the stoplight at the intersection of Oakley and Route 23. She testified that the defendant turned right on the red light and headed south on Route 23, back towards the Dairy Queen. According to Kohrt, after making the turn onto Route 23, the defendant accelerated and was going about 45

miles per hour as they approached the Dairy Queen, although Kohrt admitted that she was not watching the speedometer at the time. Defendant also changed from the right lane to the left lane as they approached the Dairy Queen. Kohrt testified that as she was looking out the passenger side window she realized the defendant had applied his brakes and looked up and saw a blue car in front of them, which they immediately hit. The blue car, driven by Angel Pence, was exiting the Dairy Queen onto Route 23 at the time of the collision. Angel Pence was fatally injured. Amy Moore, a friend of Angel Pence, and her sister, Allison Moore, were also in the blue car and both suffered injuries from the collision.

Anthony Bockelman testified that at approximately 8:30 p.m. on the night of the collision he drove northbound on Route 23 and passed the Dairy Queen. He stated that the Dairy Queen was packed with people. Bockelman testified that after he passed the Dairy Queen he observed the defendant turn right onto Route 23 (heading towards Bockelman) from Oakley Avenue. He stated that the defendant's tires were smoking and squealing as he made the turn onto Route 23. Bockelman estimated that the defendant made the turn at a speed of 40 to 45 miles per hour and performed a "power slide," causing the car to slide into the southbound left-hand lane on Route 23. Bockelman stated that the defendant smiled at him and floored his Monte Carlo as Bockelman's car passed the defendant's. Bockelman, who has worked as an automobile mechanic, testified that he heard the four-barrel carburetor in the defendant's car kick in when he floored it and that the defendant's tires were "blowing dust right off the curb." Bockelman stated that the defendant passed him and that he continued to watch the defendant through his rear-view mirror until the defendant "plowed into someone."

Steven Mamer testified that at approximately 8:30 p.m. on the evening of the accident the defendant was behind him as Mamer waited for the traffic light to change at the corner of Oakley Avenue and Route 23. Mamer testified that as the light turned green and he proceeded east on Oakley, he observed in his rear-view mirror that the defendant was turning right onto Route 23. Mamer further testified that he noticed nothing unusual about the way the defendant was driving and did not hear any squealing tires. Mamer, however, stated that he did not see the defendant complete the turn onto Route 23.

Amy Moore testified that she and her sister went with Angel Pence to the Dairy Queen on Route 23 on the evening of the collision. Moore testified that the Dairy Queen was busy when they arrived. They went to the drive-through window to order ice cream. Moore

testified that after they received their order at the pick-up window, Angel Pence pulled up to the exit and waited a minute or two, before pulling out onto Route 23, to see if any cars were coming. According to Moore, they were planning on turning left (north) on Route 23 in order to take her sister, Allison Moore, home. Amy Moore testified that Angel Pence looked both ways as they exited the Dairy Queen. She stated that when they pulled out of the Dairy Queen exit she saw a car coming south on Route 23, but that it was about 400 feet away from them and in her opinion there was plenty of time for Angel Pence to pull the vehicle out of the Dairy Queen and make a left-hand turn onto Route 23. As they pulled out, however, the defendant's car, which turned out to be the car Amy Moore saw 400 feet away, struck the Pence vehicle.

Allison Moore, the other passenger in the Pence vehicle, also testified that they pulled up to the Dairy Queen exit on Route 23 and stopped in order to see if any cars were coming.

The defendant testified that he has lived in Streator his whole life. He stated that he works for his father in an automobile body shop and that he has worked there since he was in the seventh grade. The defendant testified that he owns a red 1974 Chevrolet Monte Carlo, that the engine had been rebuilt in 1990, and that his car has a four-barrel carburetor. The defendant also stated that he installed a tachometer in his car, but that he only uses it for gas mileage purposes. The defendant testified that he is familiar with the City of Streator and with the Diary Queen. He testified that he is aware that people stand around in front of the Dairy Queen and that cars pull in and out of the driveway of the Dairy Queen, as well as the driveways of the businesses in the area surrounding the Dairy Queen. The defendant testified that he was traveling at 45 miles per hour when he hit the Pence car. We note that there is no evidence in the record that the defendant was intoxicated at the time of the collision.

Illinois State Trooper Lawrence Lepianka, an accident reconstruction expert, testified for the prosecution. Lepianka testified that his police headquarters advised him on June 1, 1992, that the Streator police had requested the services of an accident reconstruction expert to determine the speed of the defendant's car at the time of the accident. Lepianka and Trooper Weyforth, a then-uncertified accident reconstruction trainee, met with Officer Anderson (the officer who was dispatched to the scene immediately after the collision) at approximately 4:30 p.m. on June 1, and they went to the scene of the accident. Officer Anderson showed Lepianka and Weyforth where the two cars had come to rest following the collision. Lepianka took photographs that day of the scene of the accident, the Dairy Queen exit, the skid marks, and the two vehicles involved in the collision.

Lepianka identified the skid marks left by the defendant's vehicle and Angel Pence's vehicle on Route 23 in front of the Dairy Queen. Lepianka measured these skid marks and determined that the defendant's car had skidded 43 feet prior to impact and 57 feet after impact, while Angel Pence's car skidded 86 feet after impact.

Based on his observations, Lepianka concluded that the collision was an in-line collision, as opposed to an angular collision. According to Lepianka, if a vehicle is completely dominated and controlled by the striking vehicle after a collision, the collision is an in-line collision. Lepianka reached the conclusion that the collision in this case was an in-line collision because, in his opinion, the Pence car was completely dominated and controlled by the defendant's car after the collision. Lepianka testified that once he concluded that it was an in-line collision he was free to ignore such variables as the angle that the Pence car was traveling prior to impact, the angles at which both cars were deflected after impact, and the speed of the Pence car prior to impact. Since Lepianka treated the collision as an in-line collision, he did not measure the angle that the Pence car was traveling prior to impact or the angles at which both cars were deflected after impact, nor did he make a scaled diagram of the collision (although Lepianka did draw a diagram of the collision which was not drawn to scale). Lepianka testified that it would be impossible to calculate speed in an angular collision without such measured angles or a scaled diagram of the collision. Treating this collision as an in-line collision, Lepianka estimated that the speed of defendant's car at the time he slammed on his brakes (just prior to striking the Pence car) was 64 to 74 miles per hour.

Thaddeus Aycock, an accident reconstruction expert, testified for the defendant. In terms of his qualifications as an accident reconstruction expert, Aycock testified that he has taught traffic accident investigation at the Northwestern University Traffic Institute for the last 26 years; that he has lectured on accident reconstruction in over 40 States as well as in England and Canada; and that he has co-authored one of the chapters in The Traffic Accident Investigation Manual, published by the Northwestern University Traffic Institute. Aycock testified that the collision in this case was angular in nature, rather than in-line. Aycock stated that in order for a collision to be classified as an in-line collision both vehicles must move off in the very same direction after the collision as one of the vehicles was moving prior to the collision. According to Aycock, if either of the cars diverge from that precollision direction, even at a slight angle, the collision is an angular collision and, consequently, you can't judge their impact speeds by using an in-line approach. Aycock testi-

fied that in this case neither vehicle moved off in the same direction after the collision as one of the vehicles was moving prior to the collision; thus, in his opinion, the collision could not have been an in-line collision. Aycock admitted that he has not been to the scene of the accident and has not taken any measurements. Aycock based his opinion on the information that had been gathered by Trooper Lepianka and the people who investigated this accident. Some of that information included the original police officer's accident report, the accident reconstruction report prepared by Trooper Weyforth, various photographs, and the field sketch prepared by Trooper Lepianka.

The jury returned a verdict of guilty for the offense of reckless homicide. The defendant filed a motion for a new trial, alleging that he was denied a fair trial and due process as a result of the jury's exposure to prejudicial information. Defendant stated in his motion that, during the five days of the defendant's jury trial, family and friends of Angel Pence parked their cars near the entrance to the Criminal Justice Center and displayed signs, posters and photographs concerning Angel Pence in the windows of these cars in such a way as to be clearly visible to anyone using that entrance. The defendant attached to his motion 19 affidavits and copies of the poster. The poster stated that a reward of $500 would be paid for information leading to the arrest and conviction of the person or persons responsible for the vandalism to the grave of Angel Pence. One of the affidavits was that of Mary Ann Arroyo, who served as a juror in this case. Arroyo stated in her affidavit that on June 14 through June 18, 1993, the days on which the trial occurred, she observed various automobiles parked directly in front of the entrance to the Criminal Justice Center and saw the posters referring to the vandalism to Angel Pence's grave, as well as some photographs of Angel Pence. Arroyo further stated that, to her knowledge, "several other members of the jury hearing this cause also observed the posters and photographs in the various automobiles." The trial court denied the defendant's motion for a new trial.

Defendant first contends the trial court erred in denying his motion to strike the opinion of the State's expert, Trooper Lepianka, concerning the speed of the defendant's car. According to the defendant, Lepianka did not rely on scientific theories which have gained general acceptance in his field in that he ignored essential factors and other information in reaching his conclusions. Defendant argues that the most fundamental problem with Lepianka's testimony was his classification of the collision in the instant case as an in-line collision, as opposed to an angular collision.

■ The conflicting testimony of expert witnesses normally raises

an issue uniquely determinable by the trier of fact. (*St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 179.) However, in rendering an opinion, the expert must rely upon scientific theories that have gained general acceptance in his field. (*People v. Jordan* (1984), 103 Ill. 2d 192, 208.) If the expert's opinion is without proper foundation, that opinion is of no weight and must be disregarded, particularly when the expert fails to take into consideration an essential factor. (*People v. Wilhoite* (1991), 228 Ill. App. 3d 12; *People v. Parr* (1971), 133 Ill. App. 2d 82; *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063.) In *Parr*, the State's accident reconstruction expert was called to give his opinion regarding the speeds of two vehicles that were involved in an accident. The court held that the testimony of the State's expert witness was improperly admitted into evidence, in light of the fact that no proper foundation was laid for its admission. The court found that proper foundation was lacking because the State's expert failed to take into consideration the weight of the occupants of the vehicles, which was significant in light of his testimony that his opinion as to the speeds of the vehicles was based in part on the relative weight of the vehicles.

In the present case, the State's expert witness, Trooper Lepianka, calculated the speed of the defendant's car by employing an in-line collision analysis. Lepianka testified that if a vehicle is completely dominated and controlled by the striking vehicle after a collision, the collision is an in-line collision. He stated that the collision in this case was an in-line collision because the Pence vehicle was completely dominated and controlled by the defendant's car after the collision.

This classification of the collision by Lepianka was contradicted by the defense expert, Thaddeus Aycock. Aycock insisted that the collision in this case was not an in-line collision, but was rather an angular collision. He explained that an in-line collision is one in which both vehicles move off in the very same direction after the collision as one of the vehicles was moving prior to collision. According to Aycock, if either of the cars diverges from that precollision direction, even at a slight angle, the collision is an angular collision, and consequently, their impact speeds cannot be judged by using an in-line approach.

The traffic accident reconstruction manual, published by the Northwestern University Traffic Institute, also contradicts Lepianka's classification of the collision in this case as an in-line collision. We note that even though this exhibit was not introduced into evidence at trial, we may consider it in weighing expert testimony. (*Wilhoite*, 228 Ill. App. 3d at 23.) According to the traffic reconstruction manual, in in-line collisions, both vehicles after the collision move in

the before-collision travel direction of one of the vehicles. The author, in discussing the procedure used in an in-line collision analysis, states that "[i]f the directions of travel of both vehicles are along the same line (collinear) before and after the collision, then you have a candidate for this form of analysis. If not, then you will have to do something different." The author also states: "One last word of caution. If you do not have a collinear collision [, *i.e.*, in-line collision], do not consider using this methodology. Your speed estimates will not be meaningful."

■ It is clear from the record that neither the defendant's car nor the Pence car traveled in the same direction after the collision as the defendant's car was travelling prior to the collision. Lepianka himself admitted on cross-examination that the post-impact directions of the two vehicles were at least somewhat different from the defendant's precollision direction. Further, the diagram drawn by Lepianka and used by the State at trial, while not drawn to scale, depicts that the post-collision directions of both vehicles are different from the defendant's precollision direction.

Lepianka acknowledged on cross-examination that the traffic reconstruction manual published by the Northwestern University Traffic Institute is an authoritative manual or treatise in the field of accident reconstruction. In fact, Lepianka testified that the traffic reconstruction manual was one of the books he referred to in calculating the speed of the defendant's car. Yet, Lepianka testified that the departure angles of the vehicles after impact is of no significance in determining the speed of the defendant's car. We cannot find anything in the record, other than Lepianka's testimony, which supports Lepianka's contention that the departure angles of the vehicles after impact would be of no significance in determining the speed of defendant's car. In light of this fact, and in light of the fact that the traffic reconstruction manual supports the opinion of the defense's expert, we find that Lepianka's opinion is without proper foundation because it was grounded on a flawed analysis of the collision in that he classified the collision as an in-line collision, as opposed to an angular one. Therefore, his opinion is of no weight and must be disregarded. The trial court erred in denying defendant's motion to strike the opinion of Trooper Lepianka concerning the speed of the defendant's car.

Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt of the offense of reckless homicide. (720 ILCS 5/9—3 (West 1992).) A defendant is guilty of reckless homicide if he kills a person while driving a motor vehicle and the acts which caused death are such as are likely to cause death or great bodily

harm to some individual and are performed recklessly. (*People v. Bonzi* (1978), 65 Ill. App. 3d 927, 931.) A person acts recklessly in this regard when he consciously disregards a substantial and an unjustifiable risk that his acts are such as are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation. (*People v. Luttmer* (1977), 48 Ill. App. 3d 303, 305.) Recklessness may be inferred from all the facts and circumstances in the record. (*People v. Smith* (1992), 149 Ill. 2d 558, 565.) The standard of review when reviewing the sufficiency of the evidence to support a conviction of reckless homicide is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Smith*, 149 Ill. 2d at 565.) Applying this standard, we find that, without Lepianka's testimony, the evidence presented in this case, taken as a whole, was insufficient to establish the defendant's guilt on the charge of reckless homicide beyond a reasonable doubt.

Excessive speed, by itself, is not sufficient to sustain a conviction of reckless homicide. (*Bonzi*, 65 Ill. App. 3d at 931.) A charge of reckless homicide, however, may be justified by a combination of excessive speed and other circumstances which would indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others, and the circumstances are such that a reasonable person would act differently under the same situation. (*Bonzi*, 65 Ill. App. 3d at 932.) The State argues that under *People v. Bonzi* (1978), 65 Ill. App. 3d 927, 931, there is sufficient evidence to establish defendant's guilt beyond a reasonable doubt of the offense of reckless homicide even without Lepianka's testimony.

■ The record does not support the State's argument. Without Lepianka's testimony, there is no evidence that the defendant was travelling at an excessive rate of speed at the time of the collision. While the defendant admitted that he was speeding, the defendant, and his girlfriend, Ms. Kohrt, testified that he was travelling no more than five miles over the speed limit. Driving five miles over the speed limit, while technically violative of the law, does not qualify as driving at an "excessive" speed under *Bonzi*. In *Bonzi*, there was evidence that the speed of the defendant's car at the time of the collision was over 70 miles per hour in a 40-mile-per-hour zone. *Bonzi*, 65 Ill. App. 3d at 929.

In *People v. Potter* (1955), 5 Ill. 2d 365, the defendant was driving a Chicago Transit Authority bus at about 1:20 a.m. in a southerly direction on Wentworth Avenue and approaching the intersection of

66th Street. There were no traffic signs at the intersection. At the same time, Theresa Ficaro was driving her automobile east on 66th Street approaching the intersection of Wentworth Avenue. Theresa Ficaro's automobile collided with the bus at the center of the intersection. The posted speed limit for Wentworth Avenue was 25 miles per hour. There was evidence that the defendant was travelling between 45 to 50 miles per hour a block and a half from the point of impact. Defendant was charged with reckless homicide. The only evidence that was presented to convict the defendant of reckless homicide in *Potter* was that the defendant was driving at an excessive rate of speed. The *Potter* court reversed the defendant's conviction, stating that excess speed alone is not sufficient to sustain a conviction of reckless homicide. (*Potter*, 5 Ill. 2d at 371-72.) The evidence presented in the instant case to convict the defendant is even weaker than *Potter* since there is not even competent evidence that the defendant was driving at an excessive rate of speed.

■ After reviewing the evidence in the light most favorable to the prosecution, we find that, without Lepianka's testimony, no rational trier of fact could have found the essential elements of the offense of reckless homicide beyond a reasonable doubt. Accordingly, because the trial court erred in denying defendant's motion to strike the opinion of Trooper Lepianka concerning the speed of the defendant's car, we remand for a new trial.

Under the mandate of *People v. Taylor* (1979), 76 Ill. 2d 289, 309, we are required to determine whether we would be subjecting the defendant to double jeopardy by remanding this cause for a new trial. The United States Supreme Court held in *Lockhart v. Nelson* (1988), 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285, that when a reviewing court determines that a defendant's conviction must be set aside because certain evidence was erroneously admitted against him, and further finds that once that evidence is discounted, there is insufficient evidence to support the conviction, the double jeopardy clause does not forbid his retrial so long as the sum of the evidence offered by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. We find that in the present case, the sum of the evidence offered at trial, which includes Trooper Lepianka's testimony, is sufficient to sustain a guilty verdict for the offense of reckless homicide. Therefore, remanding this cause for a new trial will not subject the defendant to double jeopardy.

We need not address the defendant's remaining contentions of error since we determine that this cause must be remanded to the circuit court for a new trial.

For the foregoing reasons, we reverse the judgment of the circuit court and remand the cause for a new trial.

Reversed and remanded.

INGLIS and RATHJE, JJ., concur.