2025 IL App (1st) 232302-U

Fourth Division
Filed October 30, 2025

No. 1-23-2302

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the |
| Plaintiff-Appellee, | Circuit Court of Cook County |
| v. | No. 18 CR 60157 |
| NICHOLAS GREER, | The Honorable James M. Obbish, |
| Defendant-Appellant. | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

## ORDER

¶ 1     *Held*:   (1) Defendant's convictions for aggravated driving under the influence based on actual impairment were reversed where there was no evidence showing that defendant's use of cannabis proximately caused the fatal crash at issue. (2) There was no appellate jurisdiction to review the merits of defendant's arguments with respect to two unsentenced, and therefore nonfinal, convictions for aggravated driving under the influence based on defendant's THC concentration, requiring a remand for imposition of sentence on those counts. (3) Defendant's conviction for reckless homicide was affirmed where evidence that defendant was traveling at greater than 90 miles per hour, combined with other circumstances, rationally supported the jury's finding that his conduct was reckless and where defendant's remaining allegations of error either did not show an abuse of discretion or amount to clear and obvious error under the plain-error doctrine.

¶ 2     Following a jury trial, Nicholas Greer was convicted of one count of aggravated driving under the influence (DUI) causing death, one count of aggravated DUI causing injury, and one count of

reckless homicide. He was sentenced to concurrent terms of six, three, and five years respectively. The court merged the jury's findings of guilt on two additional counts of aggravated DUI under different theories into the counts on which it imposed sentence. On appeal, Greer challenges the sufficiency of the evidence to sustain the jury's verdict. Alternatively, he seeks a new trial for various alleged evidentiary and procedural errors.

¶ 3                                I. BACKGROUND

¶ 4        On April 1, 2018, Greer was speeding down South Indiana Avenue. As he approached East Pershing Road, he lost control of his vehicle and collided with two pedestrians, Marie Fizer and Austin Gates, killing Fizer and severely injuring Gates. Bystanders alerted the police who arrived to give aid and investigate. Upon arriving on scene, police reported the odor of burnt cannabis coming from Greer and a name check revealed that his driver's license was suspended. Officer Paul Niezabitowski, on the scene, neither asked Greer to submit to standard field sobriety tests nor called a drug recognition expert to the scene to evaluate Greer's deportment. He was taken into custody.

¶ 5        Greer was ultimately charged in a six-count indictment. The first three counts related to Fizer's death. Count 1 charged Greer with aggravated DUI, causing death, under the theory that he was under the influence of tetrahydrocannabinol (THC) to a degree that rendered him incapable of driving safely. See 625 ILCS 5/11-501(a)(4), (d)(1)(F) (West 2018). Count 2 charged him with the same offense under the theory that, within two hours of driving, his blood-THC concentration exceeded the legal limit for driving. See *id.* § 11-501(a)(7). Count 3 charged him with reckless homicide. See 720 ILCS 5/9-3(a) (West 2018). The last three counts related to Gates's injury but otherwise mirrored the first three: count 4 charged aggravated DUI under the actual-impairment theory (625 ILCS 5/11-501(a)(4), (d)(1)(C) (West 2018)), count 5 charged aggravated DUI under the blood-THC concentration theory (see *id.* § 11-501(a)(7)), and count 6, which was ultimately nol-prossed charged aggravated reckless driving (*id.* § 11-503(a)(1), (c)).

¶ 6  Before trial, Greer twice asked the court to exclude from evidence the results of tests measuring THC levels in a blood draw that was taken two hours and two minutes after the incident. Both requests were denied, and the case proceeded to a jury trial.

¶ 7  The first witness called to testify was Kezria Fleming, Marie Fizer's daughter. She acknowledged that a photograph (Exhibit 1) truly and accurately depicted her mother as she appeared in life. Exhibit 1 was admitted into evidence and published without objection.

¶ 8  Austin Gates, who had survived being hit, testified graphically that the force that hit Marie Fizer "tore her to pieces." Gates also admitted he was in a daze after being struck by Greer's vehicle.

¶ 9  Shanterria Butler, a witness to the crash, testified that, at around 4:30 p.m. on the day in question, she was crossing Indiana at Pershing when she noticed a white car speeding her way. She noticed sparks and smoke coming from the back of the white car. She ran back to the corner, and the white car went through the red light and hit Fizer and Gates, who were on the other side of Pershing.

¶ 10  Amanda McCray and Zhanice Jones testified that they were at a friend's house at 42nd and Indiana. McCray was on the porch, and Jones was in a parked car in front of the house facing north. They both observed three cars, including a white car, traveling north on Indiana at a high rate of speed. After the cars passed, McCray entered the car with Jones. Upon arriving at the intersection of Pershing and Indiana, they saw that the same white car had crashed. McCray and Jones observed Greer coming from around the side of the church on foot. Greer was crying and apologizing, saying that he did not mean to do it. Greer called his mother to inform her about the accident and then handed the phone to McCray to explain what had happened and their location. Greer had a bleeding mark above his eye. At one point during direct examination, McCray testified that, after seeing the three vehicles, she turned to Jones and observed that the cars appeared to be racing, but Greer objected, and the court struck the remark and instructed the jury to disregard it.

¶ 11  Alexander Boone testified that he was a passenger in the car with Greer, who was driving. He had gotten in the car only five or ten minutes before the crash. During that time, he did not see

Greer smoking cannabis or driving erratically. On cross-examination, Boone testified that he could not remember whether the brakes on Greer's car went out just before the crash. Defense counsel attempted to refresh Boone's recollection using a police report, but the State objected, and the trial court sustained that objection.

¶ 12    Officer Niezabitowski testified that his responsibilities included investigating fatal traffic crashes and serious personal injury traffic crashes, both of which were relevant in the Greer investigation. He also highlighted his expertise in traffic crash reconstruction and his role as a Crash Data Recorder (CDR) technician. A CDR functions similarly to a black box for motor vehicles. Without any objection, Niezabitowski was permitted to testify as an expert witness in crash data retrieval and analysis. He testified that the CDR in Greer's vehicle recorded the following speeds in the seconds before the crash: five seconds before the airbags deployed, it was going at a rate of 91 miles per hour; four seconds, 81 miles per hour; three seconds, 70 miles per hour; two seconds, 60 miles per hour; and one second, 48 miles per hour. The CDR also recorded that, during the five seconds before the airbags deployed, the brake pedal was being depressed and the accelerator was not. Niezabitowski also testified that the speed limit in the area was 30 miles per hour.

¶ 13    On cross-examination, Niezabitowski testified that, based on a surveillance video that depicted the incident, when Greer exited his car, he did not stumble or lose his balance, and he ran in the direction of the people he had hit. Later, when Niezabitowski interviewed Greer, Greer did not stutter, slur, or speak with a thick tongue, he did not seem sleepy or confused, he did not have bloodshot eyes, he was cooperative, and, at times, he cried.

¶ 14    Police officer Jonathan McCabe, an evidence technician, testified that he took photos of the scene, including one showing what appeared to be burnt, brown cigar-shaped items in the cup holder of Greer's car. The parties stipulated that the objects were not subject to testing. McCabe also testified that the vehicle strongly smelled of cannabis. He admitted that his report pertaining to the investigation did not include that fact but explained that he had processed hundreds of cars and did not always indicate it when he smelled cannabis.

¶ 15 Jennifer Bash, a forensic toxicologist employed by the Analytical Forensic Testing Laboratory at the University of Illinois at Chicago, testified that Greer's blood contained delta-9 THC at a concentration of $15.3 \pm 1.5$ nanograms per milliliter. The parties stipulated that the blood draw occurred at 6:37 p.m., just over two hours and two minutes after the crash. Bash explained that, unlike with alcohol, it was not possible to extrapolate a person's blood-THC concentration backwards in time.

¶ 16 The defense did not call any witnesses or present any evidence aside from the stipulation that the objects photographed by McCabe were not subjected to testing. The jury found Greer guilty on all five counts. After denying Greer's posttrial motion, the court sentenced him to six years for aggravated DUI causing death (count 1), five years for reckless homicide (count 3), and three years for aggravated DUI causing injury (count 4). Finding that counts 2 and 5 merged into counts 1 and 4, respectively, the court imposed no sentence on those two counts.

¶ 17                                         II. ANALYSIS

¶ 18 On appeal, Greer challenges the sufficiency of the evidence to sustain his convictions. He also argues that the trial court erred by not suppressing the evidence of his blood-THC concentration because the blood draw occurred more than two hours after the crash and that the trial court committed several other errors at trial that, cumulatively, denied him a fair trial.

¶ 19                         A. Aggravated DUI: Actual Impairment (Counts 1 and 4)

¶ 20 Greer first challenges the legal sufficiency of the evidence to sustain his conviction on counts 1 and 4 of the indictment, which charged him with aggravated DUI under the theory that he drove while under the influence of cannabis to a degree that rendered him "incapable of safely driving." 625 ILCS 5/11-501(a)(4) (West 2018). Greer contends only that the evidence was insufficient to prove, beyond a reasonable doubt, that he was incapable of safely driving.

¶ 21 It has long been established that a criminal conviction will not be set aside unless evidence is so improbable or unsatisfactory that there remains reasonable doubt of a defendant's guilt. *People v. Casiano*, 212 Ill. App. 3d 680, 688 (1991) (citing *People v. Collins*, 106 Ill. 2d 237, 261 (1985)).

When reviewing a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Grunin*, 2022 IL App (1st) 200598, ¶ 49. We will not substitute our judgment for that of the trier of fact in assessing witness credibility or assigning weight to the evidence. *People v. Gaines*, 2020 IL App (2d) 180217, ¶ 56. Our role is limited to determining whether the finding of guilt beyond a reasonable doubt was reasonable given the evidence presented at trial. *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). In answering that question, we are mindful that the fact the "defendant is 'probably' guilty" is not itself proof beyond a reasonable doubt. *People v. Ehlert*, 211 Ill. 2d 162, 213 (2004).

¶ 22    Sufficiency review must consider "all of the evidence" adduced at trial. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). It is clear from the evidence—indeed, it is conceded—that, at the time of the accident, Greer was under the influence of cannabis to at least some degree. Based on his measured blood-THC concentration from the hospital blood draw, the inference that he had a significant concentration at the time of the crash about two hours earlier is unavoidable. But section 11-501 implicitly recognizes that the presence of cannabis in a driver's system is not itself dispositive of impairment. See 625 ILCS 5/11-501(a)(7) (West 2018) (exempting licensed users of medical marijuana from criminal liability for DUI based on blood-THC concentration "unless that person is impaired" by it). And other than the crash itself, there was no evidence showing how or even whether the influence of the cannabis impaired his ability to drive safely.

¶ 23    Greer did not admit having used cannabis or being under its influence. Officer Niezabitowski did not testify that Greer was under the influence or that any of his behaviors indicated that he was under the influence. There was no testimony that a passenger was concerned that he might be impaired. *Cf. Village of Lincolnshire v. Olvera*, 2025 IL 130775, ¶ 66 (driving instructor reported to program director "that something 'was going on' " with defendant). Nor was there testimony that his behavior was indicative of impairment from marijuana use. *Cf. Olvera*, 2025 IL 130775, ¶ 67 (school dean testified that defendant's speech was slow and confusing and that his responses to

questions were delayed); *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 41 (defendant was confused, unable to follow directions, could not understand instructions, agitated, and combative); *People v. Hires*, 396 Ill. App. 3d 315, 319 (2009) (defendant had slurred speech and difficulty removing identification from wallet). Understandably, given the crash, there was no point in conducting sobriety testing on the scene, but that meant that there was not a contemporaneous assessment designed to detect impairment. *Cf. Olvera*, 2025 IL 130775, ¶ 67 (officer testified that defendant performed poorly on field sobriety tests); *Hires*, 396 Ill. App. 3d at 319 (same). Although his driving could reasonably be deemed reckless—we discuss that below—there is no evidence that the crash was caused by the effect of cannabis on his ability to safely operate a car as opposed to the extremely poor choice to operate it at a speed exceeding triple the legal limit. The evidence showed that he applied the brakes for several seconds before the collision. *Cf. People v. Johnson*, 392 Ill. App. 3d 127, 129, 131 (2009) (evidence showed that driver ignored light that was yellow as he approached intersection).

¶ 24 None of this is to say that Greer was not impaired. Under the circumstances, one can easily speculate that, at the time of the fatal crash, cannabis intoxication had rendered him incapable of safely driving. But a fundamental tenet of our justice system is that a conviction "must be based on evidence and not upon guess, speculation, or conjecture." *People v. Jones*, 174 Ill. 2d 427, 430 (1996). Easy speculation is not a substitute for proof. It does not provide a valid legal basis for sustaining a conviction. "We must decide cases on proof in the record and not theater of the mind." *People v. Davis*, 278 Ill. App. 3d 532, 544 (1996). And here, that means holding the evidence insufficient to sustain convictions on counts 1 and 4 of the indictment.

¶ 25 B. Aggravated DUI: Blood-THC Concentration

¶ 26 Greer next challenges the sufficiency of the evidence to sustain convictions on counts 2 and 5 of the indictment, which charged him with aggravated DUI based on driving while having, "within 2 hours of driving or being in actual physical control of a vehicle," a blood-THC concentration of at least 5 nanograms per milliliter. 625 ILCS 5/11-501(a)(7) (West 2018); see *id.*

§ 11-501.2(a)(6) (setting threshold). In the alternative, he argues that the trial court should have suppressed the results of the blood test because his blood was drawn more than two hours after the incident.

¶ 27     We lack jurisdiction to consider these arguments. Although Greer was found guilty on these counts, the trial court merged those findings of guilt into his convictions under counts 1 and 4. As the court did not impose sentence on either count 2 or count 5, those charges never reached a final judgment of conviction, so they cannot be appealed. *People v. Salem*, 2016 IL App (3d) 120390, ¶ 45; see also *People v. Relerford*, 2017 IL 121094, ¶¶ 71-75 (finding that appellate court did not have jurisdiction to consider validity of "unsentenced convictions").

¶ 28     Greer argues that we have jurisdiction over these counts under *People v. Dixon*, 91 Ill. 2d 346, 353 (1982). We agree that, because we have reversed the convictions into which the findings of guilt on counts 2 and 5 merged, *Dixon* vests us with jurisdiction over them. See *id.* at 353-54. But the supreme court made clear in *Relerford* that our jurisdiction in these circumstances is limited to remanding for the imposition of sentence. *Relerford*, 2017 IL 121094, ¶ 75. We have no jurisdiction to review any merits issues involving counts 2 and 5 unless and until sentence is imposed. *Id.* We therefore remand for the imposition of sentence on these counts, after which Greer may seek appellate review on the merits. See *People v. Fort*, 2019 IL App (1st) 170644, ¶ 37.

¶ 29                                 C.  Reckless Homicide

¶ 30     Greer's remaining conviction is for reckless homicide, as charged in count 3. Greer argues that the evidence was insufficient to sustain his conviction. Alternatively, he asks us to reverse and remand for a new trial based on the cumulative effect of various alleged errors or the trial court's alleged noncompliance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).

¶ 31                                 1.  Sufficiency of the Evidence

¶ 32     We first consider whether the evidence was sufficient to sustain a conviction for reckless homicide. To prove reckless homicide, the State must "show that, while driving a motor vehicle, [the defendant] unintentionally and without lawful justification recklessly performed acts, whether

lawful or unlawful, that were likely to cause death or great bodily harm to a person, and those acts *** caused [a person's] death." *People v. Grunin*, 2022 IL App (1st) 200598, ¶ 50; see 720 ILCS 5/9-3(a) (West 2018). To establish recklessness, the State must prove that the defendant "consciously disregard[ed] a substantial and unjustifiable risk" specified by the statute—here, the risk of death or great bodily harm—and that the defendant's conscious disregard "constitut[ed] a gross deviation from the standard of care that a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2018). As noted above, on a challenge to the sufficiency of the evidence to sustain a conviction, the question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Grunin*, 2022 IL App (1st) 200598, ¶ 49.

¶ 33 Greer's argument on appeal is, to quote his brief, that "the State established nothing more than that Greer was speeding." But the evidence did not show merely that Greer operated a vehicle above the applicable speed limit. It showed that he was going at least *triple* the maximum speed permitted. That alone distinguishes this case from *People v. Barham*, 337 Ill. App. 3d 1121 (2003), and *People v. Jakupcak*, 275 Ill. App. 3d 830 (1995). See *Barham*, 337 Ill. App. 3d at 1128-31 (finding evidence insufficient where, among other things, the evidence did not show what the applicable speed limit was); *Jakupcak*, 275 Ill. App. 3d at 838-39 (holding that evidence showing that defendant was going five miles per hour above the speed limit could not establish recklessness on its own).

¶ 34 Furthermore, "[a] charge of reckless homicide *** may be justified by a combination of excessive speed and other circumstances" establishing recklessness. *Jakupcak*, 275 Ill. App. 3d at 838. At sentencing, the trial court aptly summarized the facts that showed why the jury could reasonably find, beyond a reasonable doubt, that Greer's actions were reckless:

> "[T]his is not on a raceway, it's not on an expressway, it's not on a country road. This is the heart of the city of Chicago. This is Indiana and Pershing, 30 mile per hour speed limit, residential, commercial, every

other thing, other vehicles, other people out and about. It's afternoon, it's not in the middle of the night when no one else might be around."

Additionally, whether or not Greer was actively street racing, the evidence showed that he was zooming northbound on Indiana in the company of two other vehicles. These are all circumstances beyond Greer's speed alone showing why his conduct was reckless.

¶ 35    Greer also argues that his "attempt to avoid a collision cannot amount to a conscious disregard of a substantial and unjustifiable risk for the purposes of a reckless homicide conviction." On the contrary, his attempt to stop his car shows his awareness of the danger that his conduct posed, and the fact that he was unable to safely stop his vehicle before the intersection underscores precisely why his decision to fly down Indiana Avenue at 90 miles per hour was a gross deviation from the standard of care that a reasonable person would exercise.

¶ 36    When the evidence is viewed in the light most favorable to the State, a rational trier of fact could find that, based on the nature of the street, the time of day, and the presence of pedestrians and traffic control devices, Greer's conduct in driving at least 90 miles per hour was reckless insofar as he consciously disregarded the substantial risk that driving that fast in those circumstances would lead to death or great bodily harm. Accordingly, the evidence was sufficient to sustain his conviction for reckless homicide.

¶ 37                                 2.  Trial Errors

¶ 38    Next, Greer raises several claims of trial error and argues that, either individually or cumulatively, they entitle him to a new trial. See *People v. Green*, 2017 IL App (1st) 152513, ¶ 117 (recognizing that a set of individual errors that would be harmless on their own can, when considered cumulatively, require a new trial). We begin by evaluating each claimed error.

¶ 39    First, we perceive no error in Greer's complaints about the topic of "racing" that came up during Amanda McCray's testimony and again during the State's closing argument. Initially, we reject the premise that the State somehow reneged on a pretrial agreement that it would be improper to characterize Greer's activities immediately before the crash as "racing". Instead, according to

Greer's own motion for a new trial, they agreed only "that any *testimony* to that effect should be *avoided*." (Emphasis added.) And, indeed, the State instructed its witnesses not to use that term.

¶ 40    More significantly, neither the testimony nor the argument characterizing Greer as racing was improper. Although the court sustained the defense's objection to McCray's testimony that she thought the cars were racing, that testimony would have been admissible as lay opinion evidence because it was based on McCray's own perception of events, helpful to an understanding of what it was she saw as the cars sped past her, and ultimately of assistance to the jury in deciding whether Greer had acted recklessly. See Ill. R. Evid. 701 (eff. Jan. 1, 2011). For the same reasons, the court properly overruled Greer's objection to Jones's opinion that he was "trying to basically catch up to the other" cars. Given Jones's admitted opinion and the other evidence about how the cars were being driven in the lead-up to the crash, the State could properly urge the jury to infer that Greer was racing. *People v. Nicholas*, 218 Ill. 2d 104, 122 (2005) ("In closing the prosecutor may comment on the evidence and any fair, reasonable inferences it yields."). And, as the opinion testimony and argument were proper, the court reasonably denied Greer's motions for a mistrial. We find no abuse of discretion and, hence, no error.

¶ 41    Second, Greer argues that the trial court abused its discretion when it prevented defense counsel from refreshing Andrew Boone's recollection as to whether the brakes locked up in the lead-up to the crash. The State argues that Greer forfeited appellate review of that ruling by not making an offer of proof. We agree with Greer that it is clear from the context that defense counsel was hoping that Boone would testify that his brakes locked up just before the crash. What is not clear is whether the police report counsel wanted to show Boone would have actually refreshed his recollection. Witnesses must testify based on their personal knowledge. Ill. R. Evid. 602 (eff. Jan. 1, 2011). "[A] witness *** who has denied present recollection of an event and who refers to a document to refresh his recollection must then testify from his refreshed recollection and may not merely recite what he read on the refresher document under the guise of refreshed recollection." *Aliano v. Transform SR LLC*, 2020 IL App (1st) 172325, ¶ 22. Boone had already testified under

oath that he did not remember whether the brakes locked up. Whether the police report would have jogged his memory is purely hypothetical.

¶ 42     In any event, we are not persuaded that the trial court abused its discretion. Greer argues that essentially anything, including police reports written by others, may be used to refresh a witness's recollection. See *People v. Shatner*, 174 Ill. 2d 133, 153 (1996). But that does not mean that a trial court is obliged to let a party refresh a witness's recollection with anything the party wishes to. The court has discretion to regulate how witnesses' recollections are refreshed. *Id.* The record discloses neither the basis for the State's objection nor the ground on which the court sustained it. For instance, the court might have reasonably determined that trying to refresh Boone's memory of the crash with a police report containing a hearsay statement attributed to him created a "danger of undue suggestion [that] substantially outweigh[ed] the probative value" of using the report this way. 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 9 (9th ed. Feb. 2025 Update); see also *People v. Lavas*, 113 Ill. App. 3d 196, 201 (1983) (holding that trial court did not abuse its discretion by prohibiting defense counsel from refreshing a witness's recollection of statement to police officer with a police report the witness did not prepare). "On appeal, all reasonable presumptions are in favor of the trial court's action, and the burden is on the appellant to show affirmatively the errors assigned on review." *Hendle v. Stevens*, 224 Ill. App. 3d 1046, 1056 (1992). Greer has not carried the burden of showing that the trial court abused its discretion.

¶ 43     Third, Greer argues that the trial court infringed on his right to present a defense by barring him from arguing that a brake malfunction caused the accident. This argument overstates what was ultimately a single sustained objection to a specific remark during closing argument:

> "[DEFENSE COUNSEL:] There is evidence in the record that the
>
> brakes on that 2007 Saturn Aura did not work—
>
> [PROSECUTOR]: Objection. The evidence did not.
>
> THE COURT: Objection is sustained. Disregard the last remark."

It is not perfectly clear the sense in which counsel was using the term "work." He might have been arguing that the brakes were wholly nonoperational. Under that interpretation, the court properly

upheld the State's objection because there was no testimony or other evidence that the brakes had no effect on the vehicle's speed. To the contrary, the evidence showed that Greer was able to reduce his speed by at least 43 miles per hour in the seconds before the crash. But defense counsel might have been arguing that the brakes were malfunctioning—*i.e.* they were working, but not as well as they should have been. As Greer correctly notes, there is some evidence tending to support that inference, including one witness's testimony that she saw sparks and smoke coming from his vehicle, so it would have been proper for counsel to advance that theory during closing argument. But counsel did not clarify that he was urging that inference. He also did not draw the jury's attention to the evidence tending to support that theory. Read in context, then, it appears from the record that the court reasonably interpreted counsel's remark as an assertion that the brakes were entirely nonfunctional. We simply do not agree that the court's ruling amounted to a wholesale exclusion of the brake-malfunction theory of defense. We find no abuse of discretion.

¶ 44        Fourth, the trial court did not abuse its discretion when it rejected Greer's request to instruct the jury that speed alone is not sufficient to prove recklessness. Specifically, Greer asked the court to instruct the jury consistent with the following language drawn from case law:

> "While speed alone may be insufficient to sustain a conviction [citation], speed combined with other circumstances which indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others is sufficient [citation]." *People v. Boyle*, 78 Ill. App. 3d 791, 797 (1979).

> "We recognize that evidence of speed alone is not sufficient to sustain a conviction for reckless homicide. [Citation.] However, charges of reckless homicide may be justified by a combination of excessive speed and other circumstances which would indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others, and the circumstances are such that a reasonable person would

act differently under the same situation." *People v. Clark*, 130 Ill. App.

2d 558, 562 (1970).

When there is no pattern instruction addressing a topic the court determines the jury should be instructed on, the court has discretion to craft and give a non-pattern instruction. Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013); *People v. Hudson*, 222 Ill. 2d 392, 400 (2006). A trial court abuses its discretion by declining to give an instruction related to the defendant's theory of the case if the instruction would be supported by some evidence. *People v. Tompkins*, 2023 IL 127805, ¶ 42. It is also an abuse of discretion, however, to give an unclear or misleading instruction or an instruction that is not consistent with the law. *People v. Sloan*, 2024 IL 129676, ¶ 15.

¶ 45         In rejecting the proposed instruction, the court expressed concern that it would confuse or mislead the jury:

> "The speed alone would—can be interpreted in a lot of ways. I think
> it's not really law of either one of those cases, it is just the dictum which
> is contained within the opinions.
>
> Certainly, somebody driving one mile over the limit in and of itself
> would not—if that was the only issue, would not support, I assume, a
> reckless homicide. But the situation and the facts presented here so far
> by the State, a far distance from that."

This was a sound basis for refusing to give the proposed instruction. The court did not abuse its discretion.

¶ 46         Finally, the trial court did not err by denying Greer's motion for a mistrial after the State, during closing argument, displayed Illinois Pattern Jury Instructions, Criminal, No. 7.09Y[1], and argued that the jury could infer that Greer's actions were reckless if he was either driving at least 20 miles per hour above the posted speed limit or driving under the influence. See 720 ILCS 5/9-3(e-11) (West 2018) (providing permissive inference). All agree that the prosecutor should not have displayed or read that instruction, which is only applicable when the defendant is driving in a school or work zone and which the court declined to give. Greer immediately objected and, at an

ensuring sidebar, asked for a mistrial. The court denied a mistrial. Following the sidebar, the court told the jury that the instruction had been shown in error, that it should be disregarded, and that the jury should rely solely on the court's instructions.

¶ 47 A mistrial is appropriate when something happens at trial that is so prejudicial that it incurably deprives the defendant of a fair trial. *People v. Pinkett*, 2023 IL 127223, ¶ 33. Whether to grant a mistrial is a matter committed to the discretion of the trial court, so appellate relief is available only if the court abused its discretion. *People v. Soto*, 2022 IL App (1st) 201208, ¶ 153. Here, the trial court determined that its swift curative instruction neutralized any prejudice, and we are unable to say that the court abused its discretion.

¶ 48 Because we find that the trial court did not err, there is no need for us to consider their possible effects on the verdict, either individually or cumulatively. Greer is not entitled to a new trial on any of the above grounds.

¶ 49 3. Rule 431(b) Principles

¶ 50 Greer's final argument on appeal is that the trial court violated Rule 431(b). See Ill. S. Ct. R. 431(b) (eff. July 1, 2012). During jury selection, Rule 431(b) requires the trial court to question the venire to ensure that they understand and accept four foundational principles. Ill. S. Ct. R. 431(b) (eff. July 1, 2012). One of those principles is the proposition that the jury should not draw an adverse inference from the defendant's exercise of his right to remain silent at trial. See *People v. Zehr*, 103 Ill. 2d 472, 477 (1984). Originally, Rule 431(b) required the court to make sure prospective jurors understood and accepted "that the defendant's failure to testify cannot be held against him or her." Ill. S. Ct. R. 431(b)(4) (eff. May 1, 1997). But in 2012, the supreme court changed how that principle was expressed in the rule, which now requires the court to confirm that potential jurors understand and accept "that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b)(4) (eff. July 1, 2012). Here, the record shows that, when going through the Rule 431(b) principles, the trial court echoed the language of the pre-2012 version of

the rule and asked, "[D]o each of you understand and accept that a defendant's failure to testify cannot be held against him?" Greer argues that this phrasing was improper.

¶ 51 Greer acknowledges that he forfeited this allegation of error by not raising the issue in the trial court. See *People v. Thompson*, 238 Ill. 2d 598, 612-13 (2010). He urges us to review it under the plain-error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain-error analysis begins by asking if the alleged error was "clear or obvious." *People v. Moon*, 2022 IL 125959, ¶ 22. This requires us to take a "substantive look" at the issue. *People v. Keene*, 169 Ill. 2d 1, 17 (1995). Greer bears the burden of establishing that the error was clear or obvious. *People v. Stephens*, 2017 IL App (1st) 151631, ¶ 47.

¶ 52 Here, Greer cannot meet that burden because it is neither clear nor obvious that compliance with Rule 431(b) requires the trial court to recite the language of each principle verbatim. To the contrary, the supreme court recently reiterated that "the plain language of the rule *** does not require the court to explain the principles to the jurors in any particular fashion." *People v. Birge*, 2021 IL 125644, ¶ 34. Sure enough, nothing in the text of Rule 431(b) commands courts to recite the principles verbatim. So, it is neither clear nor obvious from the rule's text that it requires the court to use the precise formulations of each principle contained therein.

¶ 53 We are also not aware of any case holding that a court violates Rule 431(b) by conveying the substance of the fourth principle using the "failure to testify" formulation employed here. Greer cites *People v. Neal*, 2020 IL App (4th) 170869, for the proposition that it is error to use the "failure to testify" formulation, but *Neal* did not hold that such phrasing was, in fact, erroneous—it only noted that the State had conceded that it was. *Id.* ¶ 174. Without any further discussion, it proceeded to the second step of the plain-error analysis and, finding the evidence not closely balanced, declined to review the forfeited allegation of error. See *id.* ¶¶ 176-186. We recognize that the court followed its analysis with a somewhat lengthy aside in which it emphasized that trial courts could avoid generating appealable issues—and risking reversals—by simply reading the language of Rule 431(b) verbatim. See *id.* ¶¶ 187-197. That is sound practical advice, but it was also *dicta*, not a holding of the court.

¶ 54 We are, however, aware of at least one case finding no error in a similar formulation. In *People v. Peters*, 2018 IL App (2d) 150650—a case neither party has cited—the trial court informed prospective jurors that "every defendant has a constitutional right not to testify and the jury may not draw any inference of guilt if the defendant fails to testify." (Internal quotation mark omitted.) *Id.* ¶ 36. That formulation, the court found, "was not improper as it was consistent with *Zehr*." *Id.* Likewise here, the trial court's language was consistent with *Zehr* and with Rule 431(b) even though the court expressed the fourth principle using different language.

¶ 55 In summary, neither the rule nor case law require a trial court to instruct potential jurors using the text of Rule 431(b) verbatim. The court's use of the "failure to testify" language was not a clear or obvious error, meaning, of course, that it cannot have been plain error.

¶ 56 On a final note, our finding that the trial court's use of the "failure to testify" formulation was not clearly or obviously an error is not the same as a finding that it was proper. We agree with Greer that expressing a defendant's choice not to testify as *failing* to testify can carry the implication that the defendant has a duty to testify. See *State v. Michael T.*, 338 Conn. 705, 743-44 (2021) (noting that framing not testifying as failing to testify has "the tendency to *confirm* the validity of the jury's natural assumption that an innocent person would take the stand to respond to the accusations" (emphasis in original)). The obvious purpose of the 2012 amendment to Rule 431(b) was to remove that inaccurate implication, and continuing to describe a defendant's decision to remain silent as a failure defeats that purpose. Had Greer objected or asked the court to clarify that he did not have a duty to testify, the trial court may well have been obliged to take some step to dispel the implication raised by its "failure to testify" phrasing. *Cf. Moreland v. State*, 701 N.E.2d 288, 294 & n.2 (Ind. App. 1998) (finding no error in using "failure" in the absence of an objection but suggesting that trial courts avoid that phrasing). But Greer did not raise the issue below, and we are not persuaded that any error was clear or obvious enough to invoke the plain-error doctrine.

¶ 57                                    III.  CONCLUSION

¶ 58          This case is significant for all involved. For the foregoing reasons, we find that the evidence was not sufficient to prove beyond a reasonable doubt that Greer was impaired to the extent that he was unable to drive safely. We therefore reverse his convictions for aggravated driving under the influence under counts 1 and 4. However, the evidence was sufficient to sustain a conviction for reckless homicide under count 3. We also affirm Greer's conviction on count 3 over his claims of trial error, both preserved and unpreserved. Finally, as our disposition of counts 1 and 4 leaves counts 2 and 5 as unmerged convictions without sentences, we remand the cause with directions to impose sentence on the jury's findings of guilt as to those two counts.

¶ 59          Affirmed in part and reversed in part.

¶ 60          Remanded with directions.